UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Apex IT, Inc., | Civil No. 08-596 (JRT/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Rhema Bible College, | |
| Defendant. | |

Thomas M. Fafinski, David S. Miller for Plaintiff.
Mark V. Steffenson for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 16, 2008 on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b) [#2]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's motion be denied without prejudice.

**I.     BACKGROUND**

Apex IT, Inc. ("Apex") served a summons and Complaint upon Rhema Bible College's ("Rhema") registered agent in Oklahoma on January 31, 2008. (Def. Mem. at 1.) The Complaint was titled Apex IT, Inc., *Plaintiff*, v. Rhema Bible College, *Defendant*, captioned in Hennepin County, Minnesota, Fourth Judicial District Court. Rhema filed a notice of removal to this Court on February 29, 2008. (Dkt. No. 1) In the Complaint, Apex alleges that it entered into three contracts with Rhema "to provide and implement certain information technology systems and solutions", (Compl. at ¶ 7.), and that Rhema has failed to pay all of the fees owed for those services. (Compl. at ¶ 12.) The Complaint includes claims for Breach of Contract, Unjust Enrichment,

Account Stated and Promissory Estoppel.

### A. Rhema's Contacts with Minnesota

Rhema Bible Church is a Texas not-for-profit corporation located in the State of Oklahoma and operates a Bible college under the trade name "Rhema Bible Training Center." (Affidavit of Larry Johnson at ¶ 3.) Its corporate offices are located in Broken Arrow, Oklahoma. (*Id*. at ¶ 4.) Rhema does not own, use or possess any real or personal property in the state of Minnesota; it does not have any employees or agents in Minnesota; it maintains no office, phone listing, mailing address or post office box in the State of Minnesota. (*Id*. at ¶ 5, 7, 8.)

Rhema does broadcast religious programs in Minnesota. (Affidavit of David S. Miller at Ex. A and B.) According to its website, it broadcasts a show every Saturday evening at 8:00 p.m. on Channel 62, WDMI-TV, Minneapolis, and has broadcast a T.V. show in Minnesota since at least March of 2004. (*Id*.) It also broadcasts radio shows on Minnesota stations including one that airs Monday through Friday at 7:45 a.m. on WLKX-FM, 95.9, Forest Lake and another that airs Monday through Friday at 12:00 p.m. on KNOF-FM, 95.3, St. Paul. *See* Rhema Radio Broadcast Schedule, http://www.rhema.org/media/rft_schedule.cfm (last visited June 18, 2008).

Rhema's website also contains a page for finding "a Rhema church near you." Below the caption, the website reads: "Are you looking for a church that preaches faith-filled messages based on the Word of God? Check out our church directory for a list of churches pastored by a RHEMA graduate and find a church home today." *See* Churches Section of Rhema's website, http://www.rhema.org/church. The directory lists 23 affiliated churches in Minnesota. *See* Rhema Church Directory, http://www.rhema.org/church/directory.cfm, last visited June 18, 2008.

Rhema Bible College is not an accredited college but an accredited university in Minnesota,

North Central University in Minneapolis, accepts credit from Rhema. (Miller Aff. at Ex. F.)

Rhema's website contains a bookstore where anyone, including individuals from Minnesota may purchase books, audio tapes, compact discs, DVDs, etc. (Miller Aff. at Ex. G.) Rhema also provides correspondence Bible courses through its website for $25 per lesson. *See* Rhema Correspondence Bible School, http://www.rhema.org/education/rcbs.cfm, last visited June 18, 2008. Upon completion of each lesson, a student receives a certificate of completion and after completing six lessons, a student receives a Rhema Correspondence Bible School diploma. *Id*. One can also apply to attend Rhema Bible College in Broken Arrow, Oklahoma, by filling out an online application accessed through the website. *See* Rhema Bible Training Center Application Page, http://www.rhema.org/education/rbtc_enroll.cfm, last visited June 19, 2008.

### B.   Rhema's Relationship with Apex

Rhema initially contacted Apex at its offices in Minnesota via telephone from Broken Arrow, Oklahoma. (Johnson Aff. at 12.)[1] After this initial conversation, Apex representatives traveled to Broken Arrow, Oklahoma to offer its services to Rhema. (*Id.* at 13.) Apex presented several proposals to Rhema and negotiations related to these proposals occurred via telephone or email. (*Id*. at 14.) All alleged agreements entered into by Rhema were accepted and executed in Broken Arrow, Oklahoma. (*Id*. at 15.) During negotiations and the execution of the agreements, no Rhema officers, employees or agents ever visited the State of Minnesota. (*Id*. at 16.) Apex employees, on the other hand, in performing on the agreements traveled to Broken Arrow, Oklahoma, and spent many days

---

[1] Apex states in its memorandum that it "does not generally disagree with the facts set forth in Defendant's papers submitted in support of its motion insofar as they recount the relationship and course of dealings between Apex and Defendant." Therefore, for much of this fact section, the Court relies on the Affidavit of Larry Johnson submitted in support of Defendant's Motion to Dismiss.

at Rhema's corporate offices. (*Id*. at 17.) Apex performed the bulk of its consulting services at Rhema's corporate offices in Broken Arrow, Oklahoma, as specified in the parties' September 15, 2008, contract which stated that "[a]ll implementation and project work will occur on location at the RHEMA Bible Training Center, Broken Arrow, OK, unless otherwise agreed upon." (*Id*. at 18; Declaration of Mark Steffenson, Exhibit B at Complaint's Ex. A.)

## II.     STANDARD OF REVIEW

Jurisdiction over a non-resident defendant must satisfy the requirements of the forum's long-arm statute and of due process. *Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Because Minnesota's long-arm statute permits jurisdiction to the extent permitted by the Due Process Clause, this Court's inquiry is whether the exercise of personal jurisdiction comports with due process. *Wessels, Arnold & Henderson v. Nat. Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). Jurisdiction is appropriate only where a defendant has sufficient "minimum contacts" with the forum state that are more than random, fortuitous, or attenuated, "such that summoning the defendant would not offend traditional notions of fair play and substantial justice." *Pecoraro*, 340 F.3d at 561. The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there. *Id.* at 562 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether a defendant has sufficient minimum contacts with the forum state, a court considers the defendant's contacts in the aggregate and looks at the totality of the circumstances. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1388 (8th Cir. 1995).

The Supreme Court has identified two types of personal jurisdiction:  general and specific.

When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). If the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. *Id.* at 415 n. 9. To establish general jurisdiction, a defendant's contacts with the state must be "continuous and systematic." *Id.* at 414.

With these principles in mind, the Court looks to five distinct factors to determine whether the exercise of jurisdiction is appropriate: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Pecoraro*, 340 F.2d at 562 (citing *Digi-Tel Holdings, Inc. v. Proteg Telecomm, Ltd.*, 89 F.3d 518, 522-23 (8th Cir.1996). The first three of these considerations are of primary importance while the last two are secondary. *Id.* at 561.

To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a *prima facie* showing of jurisdiction. *See Pecoraro*, 340 F.3d at 560 (citing *Digi-Tel*, 89 F.3d at 522); *see also Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 914 (8th Cir.1994) (citations omitted). For the purposes of a *prima facie* showing, this Court must view the evidence in the light most favorable to the plaintiff. *Pecoraro*, 340 F.3d at 561 (citing *Digi-Tel*, 69 F.3d at 522, citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991)). "The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Information Services*

5

*Corp.*, 327 F.3d 642, 647 (8th Cir.2003) (citations omitted).

In considering a motion to dismiss pursuant to Rule 12(b)(2), the court may consider materials outside of the pleadings. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.1985); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F.Supp.2d 449, 452 (S.D.N.Y.2000). Doubts whether a court has personal jurisdiction over an entity should be resolved in favor of retaining jurisdiction. *See Tuttle v. Lorillard Tobacco Co.*, 118 F.Supp.2d 954, 958 (D. Minn. 2000), citing *Hardrives, Inc. v. City of LaCrosse*, 240 N.W.2d 814, 816 (Minn. 1976).

### III.   LEGAL ANALYSIS

**Plaintiff is entitled to do jurisdictional discovery.**

The Court concludes that there is a close question as to whether general jurisdiction exists in this case, and that the Plaintiff is entitled to jurisdictional discovery on the quantity of contacts Minnesota residents have with Rhema's website.

As stated above, to determine whether the exercise of jurisdiction is appropriate, courts look to: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Pecoraro*, 340 F.2d at 562 (citing *Digi-Tel Holdings, Inc. v. Proteg Telecomm, Ltd.*, 89 F.3d 518, 522-23 (8th Cir.1996). The first three of these considerations are of primary importance while the last two are secondary. *Id.* at 561.

Here, Rhema does not have a physical presence in the state of Minnesota but it does broadcast a television show and two radio shows and it maintains a website accessible to Minnesota citizens.

A party's operation of a website in a state may be enough to establish general jurisdiction. In cases where a defendant operates a website in the jurisdiction, the question of whether general jurisdiction exists requires the court to not only examine the nature and quality of the website, but also the quantity of contacts by the state's residents with the website. *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 712 (8th Cir. 2003).

In examining the nature and quality of the website, the Eighth Circuit applies the *Zippo* test. *Zippo Manuf. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). In *Zippo*, the court devised a test to determine whether specific jurisdiction over a defendant existed in a state where the defendant operated a website. The analysis hinges on the website's level of interactivity:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *Id*.

In *Lakin*, the Eighth Circuit concluded that defendant, Prudential Securities', website fell into the middle category of websites, one in which a user can exchange information with the host computer, because a visitor to the website could "review detailed company, service and financial information about Prudential savings, they can also exchange electronic mail; establish and access secure online accounts; and calculate home mortgage rates" in addition to completing online applications for home-equity loans and lines of credit. *Lakin*, 348 F.3d at 712. Prudential responded to inquiries within three to five business days. *Id*. The court deemed these contacts

7

with customers in Missouri using the website to be "continuous and significant." *Id*.

The court in *Lakin* concluded that the *Zippo* test was not, however, the end of the general jurisdiction inquiry because the *Zippo* test does not address the quantity of contacts with the forum state. *Id*. The court remanded the case to the district court for further discovery on the issue of "quantity" of contacts with the forum. *Id*. at 713. It found that the district court had abused its discretion by refusing to allow the plaintiff to conduct discovery on "the number of times that Missouri consumers have accessed the Web site; the number of Missouri consumers that have requested further information about products and services; the number that have utilized the on-line loan application; the number of times a Prudential Savings representative has responded to Missouri residents after they have applied for a loan; the number and amounts of home equity loans that resulted from online-application submission by Missouri consumers, or which are secured by Missouri property." *Id*.

In this case, Rhema's website falls into, at least, the middle category of interactivity under the *Zippo* test. A visitor to the website can conduct business in addition to reading posted information. On the business end, the website contains a bookstore where visitors can purchase books, CDs and DVDs and other media. Website visitors may also purchase correspondence courses which are taken through the website. One can also apply to attend Rhema Bible College by filling out an online application accessed through the website. As for posted information, the website lists churches in Minnesota that are lead by a Rhema graduates. It also lists schools, including a university in Minnesota, that accepts credit from Rhema Bible College. Here, as in *Lakin*, the website falls into the middle category of interactivity under the *Zippo* test. Plaintiff currently has no information regarding the quantity of contacts that this jurisdiction has with

8

Rhema's website. The Court agrees with the Plaintiff that it should be able to conduct discovery on the quantity of contacts Minnesota citizens have with Rhema's website.

## IV.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED:**

1.  That Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b) [#2] be **DENIED** without prejudice;

2.  That Plaintiff Apex be given 30 days from the date of this Report and Recommendation to conduct discovery on the issue jurisdiction. After the parties complete their jurisdictional discovery, Defendant is free to renew its motion to dismiss.

DATED: July 3, 2008                                s/ *Franklin L. Noel*
                                                   FRANKLIN L. NOEL
                                                   United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 23, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 23, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.